**KENNEDY CON., INC., Kennedy Ship & Repair, L.P., and Christopher Kennedy, Appellants**

v.

**Glenn W. FORMAN, Jr., Appellee.**

**No. 14–08–00650–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 15, 2010.

David M. Qualline, Richard H. Edelman, Houston, for appellants.

Wade B. Williams, Galveston, Terriann Trostle, Houston, for appellee.

Panel consists of Justices YATES, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

The defendants in a trespass-to-try-title action appeal the trial court's summary judgment in favor of the plaintiff. The summary-judgment evidence does not show that that the plaintiff is entitled to judgment as a matter of law on the grounds expressly stated in the summary-judgment motion. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/appellee Glenn W. Forman, Jr. filed this trespass-to-try-title action against defendants/appellants Kennedy Con., Inc., Kennedy Ship & Repair, L.P., and Christopher Kennedy (hereinafter col-lectively referred to as "Kennedy"). In his live pleading, Forman alleged that he is the owner in fee simple of the following property in the City of Galveston in Texas: (1) all of that part of Lot 502 of Section One of the Trimble and Lindsey Survey of Galveston Island (hereinafter "Lot 502") that lies north of Port Industrial Boulevard, now known as Harborside Drive, and south of Galveston Bay, and south of Parcel No. 1 described in the deed recorded under Galveston County Clerk's file number 9038382, (2) all that part of Lot 502 that lies northerly of the property described in the foregoing item (1), and (3) the strips and gores, if any, between all property conveyed herein and abutting properties and land lying in or under any public thoroughfare, opened or proposed, abutting or next to the property, and including, but not limited to, the easterly one-half of abandoned 65th Street lying northerly of Channelview Drive (hereinafter collectively referred to as the "Property").

For purposes of this appeal, we use the following shorthand terminology in referring to three different parts of the Property:

**Tract One.** The part of Lot 502 that lies north of Harborside Drive and south of Galveston Bay is "Tract One."

**Tract Two.** The part of Lot 502 that lies north of Tract One and is submerged under Galveston Bay is "Tract Two."

**Tract Three.** In 1968, the City of Galveston abandoned the part of the "street right-of-way" known as 65th Street that was north of Channelview Drive and south of Galveston Bay.[1] The eastern

---

1. The record contains no summary-judgment evidence as to the location of the shoreline of Galveston Bay in 1968. A 1984 survey indicates that, in 1984, there was land on aban-doned 65th Street that was north of the northline of the Kennedy Property and not submerged under Galveston Bay.

half of the real property that was formerly burdened by this abandoned right-of-way is "Tract Three."

To aid in understanding the general location of these tracts, we provide the following diagram: [2]

In his live petition, Forman sought judgment for title to and possession of the Property. Kennedy filed an answer in which Kennedy pleaded "not guilty"; however, Kennedy did not file a counterclaim.

Forman filed a traditional motion for summary judgment, in which he asserted that there was no genuine issue of material fact and that he was entitled to judgment, as a matter of law, that he owns the Property. Forman asserted the following in this motion:

- Forman is the owner in fee simple of the Property.

- Forman was in possession of the Property on or about July 2006, when Kennedy unlawfully entered upon and dispossessed Forman of a portion of the Property.

- Kennedy has constructed improvements on a portion of the Property and has withheld possession of the Property from Forman.

- As shown by the affidavit of Roland Bassett, Forman is the owner of Tract Three.

- In December 1968, the City of Galveston abandoned the part of 65th Street north of Channelview Drive and south

2. This diagram is a rough approximation and is not drawn to scale. The summary-judgment record does not show the current location or contour of the Galveston Bay shoreline. The dotted line in the diagram is a rough representation of this shoreline for illustration purposes; it is not an accurate depiction of the shoreline's contour or location. A 1984 survey reflects that, in 1984, part of the eastern portion of Tract Three was submerged under Galveston Bay. A 1984 survey indicates that,

in 1984, there was land on abandoned 65th Street that was north of the northline of the Kennedy Property and not submerged under Galveston Bay. This summary-judgment evidence suggests that part of Tract Three extends north of the northline of the Kennedy Property. To the extent that Tract Three currently extends north of the northline of the Kennedy Property, this is not reflected in the diagram.

of Galveston Bay. As a result of this abandonment, the owner of the land to the east of Tract Three acquired fee simple title to Tract Three. Because Forman is now the owner of Tract Two, he is the fee simple owner of Tract Three.

- Neither Kennedy nor Kennedy's predecessors in title have ever owned Tract Three.
- Kennedy's claim for adverse possession fails as a matter of law.

Kennedy filed a response in opposition to Forman's motion for summary judgment, and Kennedy also moved for summary judgment, asserting that Kennedy Con., Inc., as a matter of law, is entitled to judgment for title to and possession of Tract Three. Kennedy also filed a supplemental motion for summary judgment.

Forman filed a supplemental motion for summary judgment in which he argued that, even though Tract Two is submerged under Galveston Bay, the State of Texas does not have title to Tract Two because Tract Two falls within the scope of the land conveyed in a 1915 patent from the State of Texas to J.J. Kane (hereinafter "Patent"). Forman notes Kennedy's argument that the Patent conveyed certain submerged lands north of the northline of Tract Three and did not convey the part of Tract Two next to Tract Three (hereinafter "Neighboring Tract"). Forman asserts that, even if the Patent does not cover the Neighboring Tract, then this part of Tract Two was not submerged in 1915 and was subject to private ownership. In his supplemental motion, Forman asks that the trial court award him judgment for title as to Tract Three.

After an oral hearing, the trial court rendered a final summary judgment in Forman's favor. In this judgment, the trial court granted Forman's motions for summary judgment and denied Kennedy's motions for summary judgment. The trial court stated that Tract One and Tract Two are Forman's property. The trial court determined as a matter of law that Forman is the owner of Tract Three and that Forman is entitled to full and complete possession of Tract Three, to the full and complete exclusion of Kennedy. The trial court ruled that Kennedy has no legal or equitable interest in Tract Three. The court ordered Kennedy to remove any improvements constructed by Kennedy on Tract Three and to remove any of Kennedy's personal property from Tract Three.

ISSUES AND ANALYSIS

On appeal, Kennedy asserts that the trial court held a "de facto bench trial" by hearing live testimony at the summary-judgment hearing. In the first issue, Kennedy asserts that the trial court erred in granting summary judgment for Forman because the summary-judgment record does not prove as a matter of law that Forman owns Tract Three. In the second issue, Kennedy asserts that the trial court erred in rendering judgment for Forman after the "de facto bench trial."

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish his right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Good-*

*year* Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex.2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### Did the trial court grant a summary judgment or render judgment following a bench trial?

■ We first address whether the trial court rendered judgment after a "de facto bench trial" as Kennedy asserts. The record reflects that the trial court held an oral hearing on the motions for summary judgment filed by Forman and Kennedy. At the beginning of this hearing, the trial court stated that the parties were present for a summary-judgment hearing, and the trial court said, "We've had a witness called, Roland Bassett, and I'm now going to administer the oath." Forman had called Bassett as a witness to testify at the summary-judgment hearing. After he was sworn, Bassett testified on direct examination, under cross-examination by Kennedy's trial counsel, and then on redirect examination. The trial court then heard arguments from counsel and took the summary-judgment motions under advisement. In its final judgment, the trial court granted Forman's summary-judgment motions and denied Kennedy's summary-judgment motions.

■ Trial courts are not to receive oral testimony during summary-judgment hearings. *See* Tex.R. Civ. P. 166a(c) ("No oral testimony shall be received at the hearing"); *Lann v. Callahan*, No. 04–05–00718–CV, 2006 WL 1684785, at *1 (Tex. App.-San Antonio June 21, 2006, no pet.) (mem. op.) (holding trial court did not err in sustaining objections to oral testimony proffered at summary-judgment hearing). However, at no time during the summary-judgment hearing did Kennedy object to the trial court's hearing of live testimony, and Kennedy does not complain of the trial court's consideration of live testimony on appeal.[3] Instead, Kennedy asserts that the trial court's receipt of live testimony during the summary-judgment hearing transformed the hearing into a bench trial. We disagree. The trial court's hearing of live testimony without objection from any party did not transform the summary-judgment hearing into a bench trial. Though it is unusual and improper for a trial court to consider live testimony during a summary-judgment hearing, no party voiced any objection. The character of the proceeding as a summary-judgment hearing did not change.[4] No bench trial has occurred in this case.

### What are the possible bases upon which Forman could succeed in this trespass-to-try-title action?

■ In its summary judgment, the trial court made a determination of title to

3. Ten days after the hearing, Kennedy filed a written objection to the trial court's having heard live testimony. Kennedy did not secure a ruling on this objection. After the trial court rendered its summary judgment, Kennedy moved the trial court to rule on the objections that Kennedy had asserted during the hearing; however, Kennedy did not object to the court's receipt of live testimony during the hearing. Even if Kennedy's written objection after the hearing were considered timely, Kennedy never obtained a ruling on this ob-

jection, nor did Kennedy object to the trial court's failure to rule. Thus, the objection was waived.

4. Considering the live testimony as summary-judgment evidence would not change the analysis or disposition of this appeal. Therefore, we need not and do not address whether this live testimony should be considered as part of the summary-judgment evidence.

the Third Tract. "A trespass to try title action is the method for determining title to lands, tenements, or other real property." TEX. PROP.CODE ANN. § 22.001(a) (Vernon 2000). It is the exclusive remedy by which to resolve competing claims to property. *See Jordan v. Bustamante,* 158 S.W.3d 29, 34–35 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought. *See id.* Under well-established Texas law, it was incumbent upon Forman to prevail based upon the strength of his own title to Tract Three and not on the weaknesses of Kennedy's title. *See Hejl v. Wirth,* 161 Tex. 609, 343 S.W.2d 226, 226 (1961). To recover, Forman must establish a prima facie right of title by proving one of the following: (1) a regular chain of conveyances from the sovereign, (2) a superior title out of a common source, (3) title by limitations, or (4) prior possession, which has not been abandoned. *See Bacon v. Jordan,* 763 S.W.2d 395, 396–97 (Tex.1988).

Forman did not assert title by limitations as a summary-judgment ground. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993) (stating that appellate courts can affirm summary judgment based only on a ground expressly stated in the motion for summary judgment granted by the trial court). We discuss each of the other three possible bases for recovery below.

### A Regular Chain of Conveyances from the Sovereign

■ Forman did not assert as a summary-judgment ground that he could recover based on proof of a regular chain of conveyances of title to Tract Three from the sovereign. *See Stiles,* 867 S.W.2d at 26. In addition, the summary-judgment evidence does not contain a chain of conveyances of title to Tract Three from the sovereign to Forman. On appeal, Forman asserts that the trial court's judgment can be affirmed based on a chain of conveyances from the sovereign as to Tract Two.

■ Generally, "[t]he soil covered by the bays, inlets, and arms of the Gulf of Mexico within tidewater limits belongs to the State, and constitutes public property that is held in trust for the use and benefit of all the people." *Lorino v. Crawford Packing,* 142 Tex. 51, 175 S.W.2d 410, 413 (1943). Section 11.012(c) of the Texas Natural Resources Code echoes the *Lorino* holding: "The State of Texas owns the water and the beds and shores of the Gulf of Mexico and the arms of the Gulf of Mexico within the boundaries provided in this section, including all land which is covered by the Gulf of Mexico and the arms of the Gulf of Mexico either at low tide or high tide." TEX. NAT. RES.CODE ANN. § 11.012(c) (Vernon 2001). Two presumptions arise regarding submerged lands: (1) they are owned by the State and (2) the State has not acted to divest itself of title to them. *See Lorino,* 175 S.W.2d at 414; *TH Invs. v. Kirby Inland Marine, L.P.,* 218 S.W.3d 173, 182–83 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Kennedy has invoked this presumption and asserted that, because Tract Two is submerged under Galveston Bay, it is presumed that the State of Texas holds title to Tract Two.

Attempting to rebut this presumption, Forman proffered additional summary-judgment evidence including the Patent, arguing that by means of the Patent, the State of Texas intended to convey submerged land, including Tract Two. *See City of Galveston v. Menard,* 23 Tex. 349, 398–408 (1859) (holding that legislature could and did convey land shallowly submerged under Galveston Bay to private individual); *TH Invs.,* 218 S.W.3d at 185–

86. Under the Patent, the State of Texas conveyed the following property to J.J. Kane in 1915:

the submerged flats, or land under water, on the shores of Galveston Bay, in Galveston County, Texas, the same having been purchased and fully paid for in accordance with an act approved June 3, 1915; which said submerged flats or land under water are described by metes and bounds as follows:

Beginning at the S.E. Corner of Lot 50 Section No. 1 Trimble and Lindsey Survey of Galveston Island:

Thence N 25° 02′ 36″ W with the West boundary of said lot No. 50 594.32 varas to a 2 inch iron pipe on the shore of Galveston Bay, the S.E. Corner of this 85.70 acre survey;

Thence continuing N 25° 02′ 36″ W 990.0 varas to a point on the U.S. Harbor Line as established by the U.S. Engineer Department under the direction of the Honorable Secretary of War;

Thence with said Harbor Line S 73° 15′ 24″ W 498.42 varas to a point for the N.W. Corner of this survey, said point being the intersection of said Harbor Line with the West boundary of lot 502, section No. 1 of the Trimble and Lindsey Survey prolonged N 25° 02′ 36″ W;

Thence S 25° 02′ 36″ E972.0 [sic] varas to a two inch pipe on the shore of Galveston Bay, the S.W. Corner of this 85.70 acre survey;

Thence approximately with shore line of Galveston Bay N 75° 17′ 30″ E, 501.4 varas to point of beginning, containing within the foregoing described limits 85.70 acres of land.

Kennedy argues that the Patent conveyed only the 85.7 acres of submerged land described in the Patent and that the conveyed land did not include the Neighboring Tract. The summary-judgment evidence contains a 1984 survey showing that the southerly line of the 85.7 acre tract described in the Patent was the 1915 shoreline of Galveston Bay and that this shoreline is hundreds of feet to the north of the northline of Tract Three. According to this survey, the 85.7 acre tract described in the Patent does not include the Neighboring Tract. Kennedy argues that, because in the Patent the State of Texas did not convey the Neighboring Tract, the presumption of State ownership has not been rebutted, and Forman has not shown title to Tract Three under his argument based on the abandonment of 65th Street and Forman's ownership of the Neighboring Tract. In response, Forman argues that the southerly line of the land conveyed by the Patent was originally the 1915 shoreline of Galveston Bay but that the southerly line of the conveyed land has been moving south over time along with the shoreline of Galveston Bay, so that the southerly line of the land conveyed is now the boundary between Tract One and Tract Two. Forman has cited no cases or other authority supporting this argument.

We presume for the sake of argument the following:

- The Neighboring Tract is part of the submerged land conveyed by the Patent and is not owned by the State of Texas.
- The City of Galveston's abandonment of the right-of-way through the 1968 ordinance, in addition to removing the right-of-way, also conveyed title in Tract Three to the owner of the Neighboring Tract.[5]

5. Forman cites various cases in support of this argument. However, none of the tres-

pass-to-try-title cases that Forman cites stand for this proposition. *See Haines v. McLean,*

● Forman could establish a prima facie right of title in Tract Three by proving (1) a regular chain of conveyances of title in the Neighboring Tract from the sovereign down to Forman, and (2) abandonment of the right-of-way over Tract Three.

Even under these presumptions, we cannot affirm the trial court's summary judgment because Forman did not assert as a summary-judgment ground that he could recover based on proof of a regular chain of conveyances of title in the Neighboring Tract from the sovereign to Forman.[6] *See Stiles*, 867 S.W.2d at 26.

### Superior Title Out of a Common Source

■ On appeal, Forman asserts that this court can affirm the trial court's summary judgment because Forman proved superior title to Tract Three out of a common source. Forman alleges that the common source of title to Tract Three was the City's abandonment of the right-of-way over Tract Three. Notably, however, in his summary-judgment motions, Forman did not expressly state that he was proving title as a matter of law by showing superior title out of the alleged common source of the abandonment of the City's right-of-way. Therefore, we cannot affirm the trial court's judgment on this ground.[7] *See Stiles*, 867 S.W.2d at 26.

### Prior Possession Which Has Not Been Abandoned

■ Forman asserted prior possession as a summary-judgment ground. However, to establish entitlement to relief on this ground, Forman had to prove that he actually and exclusively possessed Tract Three, as opposed to merely constructively possessing Tract Three. *See Land v. Turner*, 377 S.W.2d 181, 186 (Tex.1964). Upon a showing of actual possession of Tract Three, Forman may continue this posses-

154 Tex. 272, 276 S.W.2d 777, 778–79, 782 (1955); *Cantley v. Gulf Prod. Co.*, 135 Tex. 339, 143 S.W.2d 912, 913–16 (1940); *Cox v. Campbell*, 135 Tex. 428, 143 S.W.2d 361, 361–66 (1940). In the cases cited by Forman, the courts do not hold that an abandonment of a right-of-way creates or conveys title; rather, the courts in these cases hold that, if a grantor holds title to real property burdened by a right-of-way and the grantor executes a deed conveying property bordering on the burdened property, then the grantor conveys that part of his property burdened by the right-of-way, unless the burdened property is expressly reserved by the grantor and even though the burdened property is not mentioned in the deed as part of the property conveyed. These cases do not stand for the proposition that a party in a trespass-to-try-title action, who has not shown that he holds title to land burdened by a right-of-way, may prove that he holds title to the burdened land by proving that the right-of-way was abandoned and that he owns land next to the burdened property. .

6. Even if Forman had asserted this ground, the summary-judgment evidence does not contain a regular chain of conveyances from J.J. Kane down to Forman. The summary-judgment evidence contains a letter from the Texas General Land Office arguably indicating, without explanation, that this office concluded that Tract Two was part of the land conveyed by the Patent. Forman asserts that the State of Texas is not claiming ownership of Tract Two and that Kennedy has no standing to seek ownership on the State's behalf. Forman cites cases stating that only the State can challenge the validity of a land patent. However, Kennedy is not seeking to assert a claim by the State to Tract Two, and Kennedy is not challenging the validity of the Patent. Rather, Kennedy is demanding that Forman prove one of the four methods for recovering in a trespass-to-try-title case, one of which might require proof as to what land was conveyed by the Patent, without challenging the validity of the Patent.

7. Even if Forman had asserted this ground, Forman has cited no case holding that, in a trespass-to-try-title action, an abandonment of a right-of-way over land can constitute a common source of title to the land previously burdened by the right-of-way.

sion by either actual or constructive possession up until the time at which Kennedy allegedly dispossessed Forman, as long as Forman does not abandon possession. *See id.* at 185–88. Nonetheless, Forman must show an initial actual possession of Tract Three.[8] *See id.* The record contains no summary-judgment evidence showing that Forman actually possessed Tract Three at any time, and there is certainly no evidence proving this proposition as a matter of law. Therefore, the trial court erred to the extent it granted summary judgment based on Forman's prior possession. *See id.* (holding that plaintiff in trespass-to-try-title action must prove initial actual possession to recover based on "prior possession," even against a trespasser, and that evidence of constructive possession by deed and payment of taxes on the land did not prove actual possession as a matter of law).[9]

## CONCLUSION

██ Forman was required to establish a prima facie right of title by one of the accepted methods: (1) a regular chain of conveyances from the sovereign, (2) a superior title out of a common source, (3) title by limitations, or (4) prior possession, which has not been abandoned. *See Bacon,* 763 S.W.2d at 396–97; *Land,* 377 S.W.2d at 188. Forman did not assert any

of the first three methods as a summary-judgment ground in his summary-judgment motions. Though Forman asserted prior possession as a ground, he failed to prove an initial actual possession that is required to show prior possession. Therefore the trial court erred in granting summary judgment. *See Land,* 377 S.W.2d at 188 (holding that because jury found trespass-to-try-title plaintiff did not prove title by limitations and because, as to other three ways of proving title, plaintiff did not seek jury findings or prove these grounds as a matter of law, plaintiff could not recover); *Kilpatrick v. McKenzie,* 230 S.W.3d 207, 214–15 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (holding that evidence at bench trial was not legally sufficient to support recovery by trespass-to-try-title plaintiff on any of the four potential methods of recovery in such actions and rendering a take-nothing judgment against plaintiff). Accordingly, we sustain Kennedy's first issue, reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.[10]

---

8. To the extent that *Ballingall v. Brown* holds that an initial actual possession is not required, the Supreme Court of Texas in *Land* overruled that holding. *See Land,* 377 S.W.2d at 185–88; *Ballingall v. Brown,* 226 S.W.2d 165, 171 (Tex.Civ.App.-Fort Worth 1949, writ ref'd n.r.e.). The other cases cited by Forman are not contrary to *Land* because these cases involve actual possession. *See Reiter v. Coastal States Gas Producing Co.,* 382 S.W.2d 243, 246–47 (Tex.1964); *Corder v. Foster,* 505 S.W.2d 645, 649 (Tex.Civ.App.-Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Dinwitty v. McLemore,* 291 S.W.2d 448, 451 (Tex.Civ.App.-Dallas 1956, no writ).

9. Kennedy asserted in the trial court that Kennedy owned Tract Three. Subsequently in the trial court, and also on appeal, Kennedy has stated that Kennedy does not claim title to Tract Three or Tract Two. In any event, Forman must succeed on the strength of his title rather than on the weakness of Kennedy's title. *See McKenzie,* 230 S.W.3d at 213–14. If a trespass-to-try-title plaintiff does not prove any of the four permissible methods for recovery, then the plaintiff takes nothing, even though the defendant may be a trespasser. *See Land,* 377 S.W.2d at 188.

10. In a footnote in the appellant's brief, Kennedy asserts that this court can render judg-

ment in Kennedy's favor based on Kennedy's motions for summary judgment. However, in the appellant's brief, Kennedy does not assign error as to the trial court's denial of Kennedy's summary-judgment motions. *See* Tex R. App. P. 38.1(f); *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986). Furthermore, Kennedy has provided no analysis or citations to the record or legal authorities in support of an argument that the trial court erred by denying Kennedy's summary-judg-ment motions. Therefore, Kennedy has waived this issue. *See* Tex.R.App. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding that, even though courts interpret briefing requirements reasonably and liberally, a party asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of the party's argument).